## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICK MICHAEL O'BRIEN, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-0691 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| *Respondent*. | § | |

### MEMORANDUM OPINION AND ORDER

State inmate Patrick Michael O'Brien, proceeding *pro se*, filed a section 2254 habeas petition challenging his twelve 2007 convictions for aggravated sexual assault of a child, sexual assault of a child, and/or indecency with a child.  Respondent filed a motion for summary judgment (Docket Entry No. 23), to which petitioner filed a response (Docket Entries No. 32, 33).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons that follow.

### *Procedural Background and Claims*

Petitioner was convicted of four counts of aggravated sexual assault of a child, six counts of indecency with a child, and two counts of sexual assault of a child in Montgomery, County, Texas, on April 9, 2007.  The victims included petitioner's son, stepson, and

daughter.  Petitioner's sentences were ordered served cumulatively, for a total of 135 years' incarceration.

Petitioner's convictions were affirmed on appeal in *O'Brien v. State*, No. 11–07–00201–CR, 2009 WL 875458 (Tex. App.— Eastland 2009, pet. ref'd). The Texas Court of Criminal Appeals refused discretionary review, and denied petitioner's first application for state habeas relief.   It dismissed his second application for habeas relief as an abuse of the writ.

Petitioner raises the following claims for relief in the instant petition:

1.    Trial counsel was ineffective in

   (a)    failing to raise a double jeopardy violation;

   (b)    failing to object to the presence of members of the motorcycle group, Bikers Against Child Abuse;

   (c)    failing to object to the State's vouching for the credibility of its witnesses;

   (d)    failing to object to the State's comment on his pre-arrest silence and other improper jury argument;

   (e)    failing to insure petitioner received a fair trial by an impartial jury;

   (f)    failing to object to the jury charge; and

   (g)    having a conflict of interest.

2.    Appellate counsel was ineffective in

   (a)    failing to discuss potential grounds of error with petitioner;

     (b)    failing to designate portions of the record from petitioner's first trial for use on appeal in the second trial; and

     (c)    failing to raise substantial errors.

3.    The State withheld evidence in violation of *Brady*.

4.    The State wrongfully vouched for and bolstered the testimony of its outcry witnesses.

5.    The trial court erred in

     (a)    including an improper instruction in the jury charge; and

     (b)    failing to hold a *Garcia* hearing.

6.    Petitioner was denied a fair trial due to the presence of Bikers Against Child Abuse members at trial.

7.    The intermediate state court of appeals erred in overruling petitioner's challenge to the sufficiency of the evidence.

8.    The intermediate state court of appeals erred in overruling petitioner's double jeopardy argument.

Respondent argues that these claims are without merit and should be dismissed.[1]

### *The Applicable Legal Standards*

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U .S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court

---

[1]Respondent correctly asserts that some of petitioner's claims are procedurally defaulted. However, because all of petitioner's claims lack merit, the defaulted claims will be addressed on the merits.

unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view

that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

### *Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings.   Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant.   Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court.   *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### *Insufficiency of the Evidence*

Petitioner claims that the intermediate state court of appeals erred in finding the evidence sufficient to support the convictions.   This Court liberally construes petitioner's claim as challenging the sufficiency of the evidence to support the convictions.[2]

In finding the evidence sufficient, the appellate court stated as follows:

Appellant's first six points address the sufficiency of the evidence to support his convictions for the offenses against his daughter.   The jury convicted appellant of the aggravated sexual assault of his daughter by placing his sexual organ in his daughter's mouth, of indecency with his daughter by touching her genitals, of indecency with his daughter by having her touch his genitals, and of indecency with his daughter by showing his genitals to her.   Appellant contends that the evidence is factually insufficient to support his convictions

---

[2]This Court does not, and cannot, consider whether the intermediate state appellate court correctly found the evidence sufficient under purely state law standards.   Federal courts do not sit as "super state supreme courts" to review errors of state law.   *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991).

for the aggravated sexual assault and the indecency by having his daughter touch him charges because the only direct evidence was his daughter's testimony, because he denied the incident occurred, and because his daughter's mother (his ex-wife) had a motive to fabricate her testimony. Appellant challenges the legal and factual sufficiency of the evidence to support his convictions for indecency by touching his daughter's genitals because he contends that there is no evidence he actually touched his daughter's genitals; that the evidence established that, at the most, he placed his hand on top of his daughter's hand to show her how to touch herself; and that, at best, any intent was to arouse or gratify his daughter's sexual desires and not his own. Appellant argues that the evidence is legally and factually insufficient to support his conviction for exposing his genitals because exposure is included in the other three offenses and because conviction of indecency by exposure violates his double jeopardy protections. This argument is also the basis for his eighteenth point.

The daughter testified that she was eleven years old and in the fifth grade at the time of the trial. She described how, when she lived on Shady Oaks, appellant would show her movies of '[w]omen and boys having sex' and of naked women 'posing.' She stated that having sex meant where a 'boy pushes his private part into a girl's' private. She remembered one of the movies was named 'The Housekeeper' and was about a maid having sex with a male. Sometimes, appellant and his son would watch the movies with her. Both appellant and his son would be 'playing with theirselves' during the movie. She described how sometimes appellant and his son would play 'individually' and sometimes 'they would do it together.' When it was just appellant and her, she would '[p]lay with [appellant].'

Appellant also showed her pictures on his computer in files labeled 'Puffies' and 'Reds.' She stated that 'puffies' meant a 'puffy nipple' on naked women. 'Reds' were naked redheaded women 'posing.' Appellant told her not to tell her mother.

At his office, appellant took her hand and rubbed it on her private. He told her that that was her 'pussy' and that she 'should rub' her 'click' because 'it felt good.' She could not remember if appellant's hand actually touched her private, but she remembered that her privates were only rubbed because appellant's hand was on top of her hand and moving her hand. She repeatedly testified that appellant 'showed' her and that he 'just rubbed' her. Sometimes, she moved her hand up and down on appellant's private part. Appellant told

her that that was his 'dick.'  His daughter testified that, while she was moving her hand, '[w]hite stuff' came out of the 'hole' on 'the top' of his private part. The 'white stuff' went everywhere, and appellant had to clean it up with a paper towel.  He told his daughter that the 'white stuff' was called 'cum.'  He told her to lick and suck on his private part.  She did, but nothing came out. Appellant also pulled his pants down, put his hands on his private part, and did 'an up and down motion.'

Most of the time that she was with appellant, they would sleep together.  They had slept in bed together after appellant touched himself and after she put her mouth on his private part.  She testified that she did not remember which type of touching occurred first and that she was seven or eight when this behavior started.

Appellant's daughter testified that he had told her to keep this a secret.  She did not tell for awhile because she did not want appellant to be mad at her. Finally, she had a 'very sick stomach' and 'just couldn't keep it inside' anymore.  Before she told her mother, she tried to call appellant to be sure it was okay with him to tell because she did not want him to be mad.

His daughter further testified that she loved appellant, that she was upset her parents had divorced, and that she wanted them to be a family.  She liked going to appellant's home, missed appellant, and was not mad at him.  She stated that appellant had never put anything inside of her sexual organ.  His son would sometimes lick the cheek part of her bottom.  Both appellant and his son would kiss her by putting their tongues in her mouth.

She testified that appellant told her not to tell her mother because her mother would put him in jail.  She 'thought [that] it was normal and that 'everybody did it.'  As she got older, she started getting a funny feeling in her stomach and decided to call appellant to see if it would be okay to tell.  When she called him, no one answered the phone.

Cheryl Lynn O'Brien testified that she had been married to appellant but that they were divorced and that the victim was her daughter.  On June 12, 2005, Cheryl had been watching a program about sexual abuse and about strangers inappropriately touching children.  She had talked 'very vaguely' to her daughter about 'being touched' before.  That day while she was taking a bath and her daughter was lying on the bathroom floor reading a book, Cheryl talked to her daughter again, told her that it was wrong, and asked her daughter

8

to always tell her if that ever happened.  Her daughter left the bathroom for a 'couple of minutes.'  When she returned, she told Cheryl that she had to tell her something and that Cheryl could not get mad.  Her daughter told her that appellant had showed her pictures of naked people posing and having sex, that sometimes she touched appellant, and that appellant had touched her 'down there.'  While her daughter showed Cheryl how she had touched appellant by moving her hand up and down, her daughter was crying.  Her daughter also said that sometimes she used her mouth instead of her hand.  Her daughter asked Cheryl not to hate her and explained that she had never told because appellant had said that Cheryl would put him in jail.  Cheryl described how her daughter told what channel they had watched the movies on and how appellant had 'rubbed her down in her privates.'  Her daughter used the words 'playing with' to describe masturbation.  Cheryl stated that she called the police after talking with her daughter.

Appellant testified that his divorce from Cheryl had not been amicable and that there had been a lot of questions about money.  Appellant stated that he had never touched his daughter in any way for sexual gratification.  He further stated that he had never done anything sexually inappropriate with his daughter and that he had never exposed himself to her.  He denied any sort of sexual activity with any of the three children.  Appellant also denied any knowledge of a movie called 'The Housekeeper' and testified that he never had files called 'Reds' or 'Puffies' on his computer.

When all of the evidence is viewed in a light most favorable to the verdict, we find that the evidence is legally sufficient to support the jury's decision that appellant committed the offenses of indecency with his daughter by touching her genitals and by exposing his genitals.  His daughter testified that appellant would 'play' with himself while they watched movies together, that he had pulled his pants down and showed her his 'private parts,' and that he had showed her how to rub his 'dick.'  She also testified that appellant had taken her hand in his hand and rubbed his private part.  Cheryl testified that appellant's daughter described how appellant had rubbed her 'down there.'  A rational jury could have found beyond a reasonable doubt that appellant used his hand to teach his ten-year-old daughter how to masturbate and that he did so for his own sexual arousal and gratification.  His daughter testified concerning multiple instances of touching and masturbation.  A rational jury could have found beyond a reasonable doubt that appellant exposed his genitals to his daughter at various times.

As a factfinder, the jury balanced not only appellant's testimony but also his demeanor when he denied any possible sexual misconduct and described his concerns about his former wife's motives and his daughter's lying about the sexual activities between them and between him and his stepson with appellant's daughter's testimony and demeanor.  The jury concluded that the evidence established beyond a reasonable doubt that appellant had exposed his genitals to his daughter, had his daughter put her mouth on his penis, had touched his daughter's sexual organ, and had his daughter touch his penis.  When all of the evidence is viewed in a neutral light, we find that the evidence supporting the verdicts concerning the four offenses against appellant's daughter is not so weak that the verdicts are clearly wrong and manifestly unjust and that the verdicts are not against the great weight and preponderance of the conflicting evidence.  The evidence is factually sufficient to support appellant's convictions for the offenses alleged in Count Nos. One through Four.  All of appellant's challenges to the sufficiency of the evidence to support his convictions for offenses against his daughter are overruled.

In his next six points, appellant challenges the sufficiency of the evidence to support his convictions for committing the four offenses against his stepson. The jury convicted appellant of two offenses of indecency by contact by having his stepson touch appellant's genitals (Count Nos. Five and Six). The jury also convicted appellant of the sexual assaults of his stepson by penetrating his stepson's mouth with his sexual organ (Count No. Seven) and by causing his stepson's mouth to contact his sexual organ (Count No. Eight). The sexual assault offenses were not aggravated offenses because his stepson was fourteen at the time.  Appellant contends that the evidence is factually insufficient to support both indecency convictions because the only direct evidence was his stepson's testimony and because Cheryl testified that she had never observed anything that would suggest or support that inappropriate sexual activity was occurring between appellant and his stepson.  Appellant challenges both the legal and factual sufficiency of the evidence to support the sexual assault offenses because the only direct evidence was the stepson's testimony.  Appellant contends that a rational jury could not have found penetration based on his stepson's testimony concerning 'oral pleasure.'

Appellant's stepson testified that he was nineteen at the time of trial.  The stepson described how he enjoyed being around appellant, how for 'a long time' appellant 'was [his] dad,' and how they were 'almost a perfect family except for maybe a couple of little arguments here and there over school or something like that.'  When they were living in a house on Powell Street,

appellant showed his stepson 'sexual pictures' on the computer.  The stepson described the pictures as a 'man and a woman having intercourse.'  That same week, appellant showed him a 'pornographic video.'  The video showed men and women having sex as well as women having sex with each other. Appellant took the video out of a 'little cabinet in the stairwell' that had a padlock on it.  While there was one key to the cabinet, appellant showed him how to open the lock with a steak knife.  His mother did not know about the videos, and they only watched them when she was gone.

Appellant, his son, and his stepson would watch the videos together. Appellant and his son would have shirts on but no pants.  First, they would masturbate themselves.  Then, appellant would masturbate his son.  The first time his stepson saw this, no one touched him.  Later, when he was watching a video with appellant, appellant reached over and masturbated his stepson until his stepson ejaculated.  The stepson also masturbated appellant.  The next day, appellant's son was trying to find the pictures on the computer when appellant came over, found the pictures, and gave his son 'oral pleasure.'  His son masturbated both appellant and appellant's stepson while the stepson masturbated appellant and appellant's son.

Later, when the three were masturbating while watching the computer, appellant put his mouth on his stepson's penis and gave him 'oral pleasure for awhile.'  Then, appellant told his stepson to do the same to him.  Appellant told both boys that it was his 'fatherly duty to teach [them] about sex' and 'to show [them] this type of stuff' and that they should not tell Cheryl because she would get really mad.  His stepson testified that he 'figured it, you know, the father must show the kid this because, you know, [he] guess[ed] it would teach the kid later in life.'

Appellant's stepson remembered one specific incident when the three had gone fishing.  Either appellant's son or stepson said that they 'were horny,' and appellant pulled the boat into 'a little cove thing.'  The three masturbated and gave each other oral pleasure.  Appellant asked his stepson if 'he could go anal.'  His stepson answered no because 'it just didn't feel right.'

His stepson moved out right before he started high school.  He was 'really good friends' with appellant's son, and he would go and spend the night with him and appellant.  Appellant's stepson testified that the mutual masturbation and oral pleasure continued between the three and that he had been 'convinced that it was [appellant's] duty to show [him] these things, that [appellant] was

11

teaching [him] stuff that [he] guess[ed] he could use later in life so [he] wouldn't be embarrassed because [he] didn't know.' The sexual activity stopped when the stepson quit going over to appellant's home sometime in late 2004 or early 2005.

Appellant's stepson testified that he was aware that an adult 'with like a five[-]year[-]old kid or a ten-year[-]old kid' was 'extremely wrong.' But since he was not 'forced into it,' he thought what appellant, appellant's son, and he were doing was not wrong. He testified that he 'figured what happened to [him] was wrong' when he saw how people reacted when his little sister told what appellant had done to her. Appellant's stepson stated that he was embarrassed, figured he would 'let it go because it was the past,' and did not mention appellant's sexual activity with him. Later, he told the district attorney's office because he felt that they had heard about 'this stuff before.'

Appellant's stepson further testified that he never saw anything happen between appellant and appellant's daughter. However, sometimes pornographic videos would still be in the VCR, or pornographic pictures would be saved on the computer where his daughter could 'just open' the file, and a bottle of personal lubricant would be out on the computer desk. His stepson had watched appellant use personal lubricant, and once, appellant had provided him with some.

Appellant's stepson testified that, while he did not hate appellant, he had a 'strong dislike for what has happened with the events' and that he 'kind of [felt] sorry for [appellant].' He was upset at first that appellant and his mother were divorcing because appellant had made his mother happy and because appellant was his dad. He stated that he thought it would be 'kind of [a] far stretch' for his family to get back together now.

Appellant testified that his stepson was lying and that he had never done any of the activities his stepson testified about.

Appellant's son testified using the term 'oral sex' to describe some of the sexual activity between appellant and his stepson, between appellant and himself, and between appellant's stepson and himself. His son also testified that the three performed oral sex on each other during the fishing trip.

When all the evidence is viewed in the light most favorable to the verdict, the evidence is legally sufficient to support the jury's findings that appellant

committed the offenses of sexual assault with his stepson.  Likewise, when viewed in a neutral light, the evidence is factually sufficient to support the convictions for indecency and sexual assault.  A rational jury could have determined that by 'oral pleasure' appellant's stepson was referring to oral sex and to the penetration of mouths by sexual organs.  The evidence supporting the verdicts concerning the four offenses against appellant's stepson is not so weak that the verdicts are clearly wrong and manifestly unjust, and the verdicts are not against the great weight and preponderance of the conflicting evidence. These points are overruled.

In his next five points, appellant challenges the sufficiency of the evidence to support his convictions for the four offenses against his son.  The jury found appellant guilty of exposing his genitals to his son (Count No. Nine) and of aggravated sexually assaulting his son by penetrating his son's mouth with his sexual organ (Count No. Ten), by contacting his son's mouth or penetrating his son's mouth with his sexual organ (Count No. Eleven), and by having his son penetrate appellant's anus with his son's sexual organ (Count No. Twelve). The sexual assault offenses were aggravated offenses because his son was alleged to have been younger than fourteen.  Appellant contends that the evidence is factually insufficient to support the conviction for exposure because his son's testimony was the only direct testimony of the exposure. Appellant challenges the factual sufficiency of the aggravated sexual assaults in Count Nos. Ten and Eleven on the grounds that there is insufficient evidence of penetration and to establish the age of his son.  He contends that the final aggravated sexual assault conviction was both legally and factually insufficient to show that his son was under the age of fourteen.

Appellant's son testified that he did not see appellant during the first nine years of his life.  When he was nine and living at a halfway house in San Antonio, appellant came to meet him.  When he was ten years old and in the fifth grade, he moved in with appellant, Cheryl, appellant's daughter, and appellant's stepson.  They lived on Powell Street.  His son stated that this was a 'struggling period' for him.  He had been on Ritalin for hyperactivity, Depricote for depression, and zolpidem as a sleep aid; and he was not 'exactly the best kid [he] could have been in school.'  He described Cheryl as an 'OCD clean freak' and stated that that caused a strain.  Overall, he stated that the living conditions were constructive and that the situation was working. Cheryl was strict in a 'good motherly values' way.  During his sixth grade year, appellant began tapering off his son's medication.

Appellant's son testified that, during the six or seven years he lived in the Powell Street house, appellant touched him in inappropriate ways. He thought that he had been in the fifth or sixth grade when the touching started. One night when he could not sleep, he walked into the living room while appellant was watching internet porn on the television. He was curious and asked appellant questions. The pictures were a 'random set of male on female, anal, vaginal sex, lesbians.' Appellant's son stated that 'that night, [he] was taught how to masturbate with [his] hand.' His son stated that he had trouble with dates, that he thought this occurred in the summer of 1998, and that he was twelve or thirteen at the time.

His son testified that 'it led from there to oral sex between [him] and [appellant's stepson] and [appellant].' Sometimes, the boys would 'do it' in front of appellant. Sometimes, they would 'do it' when they were by themselves. When appellant masturbated in front of his son, he exposed his genitals to his son.

Appellant's son testified that the next thing that 'happened' to him that 'was different' was that he had anal sex with appellant. One time, he was in trouble and had to stand in the corner on his toes. After he had been standing there awhile, appellant came into the room and said that 'sometimes he would do things when he was younger just because he wanted to do something to his father.' Appellant asked his son if that was the case. His son stated that he 'used [this] as an excuse to get out' of the corner. They went back to the computer room and 'got naked.' A masturbation session began, and appellant also put his own finger into his own anus. Appellant then asked his son 'what is it that [he] would like to do to [appellant].' His son answered that he 'really hadn't wanted anything to do with [appellant]' but that he 'just wanted to feel what a woman was like.' Appellant put lubricant on 'his butthole,' and they 'proceeded to have anal sex.' Appellant asked his son to perform anal sex on him, but appellant did not perform anal sex on his son.

Appellant's son described how appellant would masturbate and ejaculate in front of him. Sometimes, appellant would use lubricant on his anus and on his finger. His son testified that, when he was younger than fourteen, appellant had put his sexual organ inside his son's mouth, and he had put his sexual organ inside of appellant's mouth. Appellant's son also described how appellant's daughter had 'jacked [him] off once,' how he had touched her genitals, and how he had licked the cheeks of her butt. When his son told

14

appellant about this activity, appellant told his son that he was not upset and that it 'was going to be okay.'

On cross-examination, appellant's son testified that he was not sure if he was thirteen or fourteen when the anal sex occurred after he had been standing in the corner.  Around the time that he was fifteen, appellant's son decided that he was not going into appellant's office 'anymore for the purposes of masturbation.'  Appellant's son remembered the oral sex in the water but had no 'recollection' of appellant attempting anal sex with his stepson.

On redirect, appellant's son testified that appellant had offered to pay for counseling if he would testify that nothing had happened between them.  His son stated that he 'hem hawed' because he loved appellant very much and because he would not be the kind of person he was if appellant had not come into his life.  He remembered that he moved to Powell Street in August 1998 and that he moved from Powell Street during Christmas of his sophomore year in high school.

Cheryl testified that appellant's son moved in with the family in 1998 when they lived on Powell Street.  The record reflects that appellant's son and stepson would have both been ten years old and his daughter would have been two years old.  They left the Powell Street house in the spring of 2004.  Cheryl's divorce from appellant was final in 2005.

Appellant denied any sexual misconduct with his son.  He stated repeatedly that his son as well as his daughter and stepson were lying.  Appellant testified that he did ask his son to testify on his behalf but that he never asked his son to say that nothing happened between them 'because nothing did happen.'

After applying the applicable standards of review, we find that a rational jury could have found all of the elements of each offense.  As the sole finder of fact, the jury was the sole judge of the weight and the credibility of the witnesses' testimony.  When viewed in the light most favorable to the verdict, the evidence is legally sufficient to support the convictions for sexual assault of his son when his son was under the age of fourteen.  When viewed in a neutral light, the evidence supporting the verdicts concerning the four offenses against appellant's son is not so weak that the verdicts are clearly wrong and manifestly unjust.  Further, the verdicts are not against the great weight and preponderance of the conflicting evidence.  These points are overruled.

*O'Brien*, at *2–8 (citations omitted).

A sufficiency of the evidence challenge to a state conviction must overcome a doubly deferential standard of review. *Parker v. Matthews*, 567 U.S. ___, 132 S. Ct. 2148, 2152 (2012); *Harrell v. Cain*, 595 F. App'x 439, 2015 WL 900584 (5th Cir. 2015). First, the evidence is sufficient to support a conviction whenever, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Second, a state court decision rejecting a sufficiency challenge may not be overturned on federal habeas review unless the decision was objectively unreasonable. *Cavazos v. Smith*, ___ U.S. ___, ___, 132 S. Ct. 2, 4 (2011).

The Texas Penal Code defines, in relevant part, the offense of indecency with a child as:

> (a) . . . if, with a child younger than 17 years and not the person's spouse, whether the child is of the same or opposite sex, the person:
>
>> (1)    engages in sexual contact with the child or causes the child to engage in sexual contact[.]
>
>> *    *    *    *
>
> (c)    In this section, 'sexual contact' means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:
>
>> (1)    any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child.

TEX. PENAL CODE § 21.11.

16

The Texas Penal Code defines, in relevant part, the offense of aggravated sexual assault of a child as:

(a)     A person commits an offense:

    (1)     if the person:

*     *     *     *

        (B)     intentionally or knowingly:

*     *     *     *

            (iii)     causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor; and

    (2)     if

*     *     *     *

        (B)     the victim is younger than 14 years of age.

TEX. PENAL CODE § 2.021.

This Court has reviewed the trial record and finds that the intermediate appellate court's rendition of the facts and testimony set forth above is correct and supported by the record. The Court further finds that this evidence meets the federal sufficiency standards under *Jackson* in that a review of the evidence in the light most favorable to the prosecution plainly shows that a rational finder of fact could find the essential elements of the crime beyond a reasonable doubt. Petitioner does not show that the state court's conclusion that

17

the evidence was sufficient to support the conviction was objectively unreasonable, and habeas relief is unwarranted.

### *Double Jeopardy*

Petitioner next complains that the intermediate state court of appeals erred in overruling his double jeopardy claim.  The Court liberally construes petitioner's argument as claiming that his convictions violated his protections against double jeopardy.

Petitioner argues that his double jeopardy protections were violated as to Counts 4 and 8 because "multiple instances were introduced and described in trial," and there is no guarantee that the jury did not convict him of those two counts based upon evidence used to obtain convictions in Counts 1, 3, and 7.  (Docket Entry No. 11, pp. 6–7.)

Petitioner raised these arguments on direct appeal.  In rejecting the arguments, the intermediate state court of appeals held as follows:

> In his final two points, appellant contends that his conviction for exposing his genitals to his daughter (Count No. Four) and conviction for sexually assaulting his stepson by causing his stepson's mouth to contact appellant's sexual organ (Count No. Eight) are barred by double jeopardy based on his convictions of indecency by contact and aggravated sexual assault of his daughter (Count Nos. One through Three) and sexual assault by penetration with his stepson (Count No. Seven).  Appellant contends that exposure of his genitals would be lesser included offenses of indecency by contact and sexual assault because neither indecency by contact nor sexual assault could possibly occur without the necessary exposure of genitals.  Appellant also contends that, on the occasions where his daughter stated that she saw him masturbate, there was no evidence that, when he exposed himself for this activity, he was aware that she was present.  As to the offense against his stepson, appellant argues that his conviction for penetrating his stepson's mouth precludes his conviction for contacting his stepson's mouth with his sexual organ because contact would necessarily have occurred prior to penetration.  Therefore,

18

appellant concludes that his convictions for indecency by exposure with his daughter and sexual assault of his stepson by contact result in multiple prosecutions and punishments for the same offenses.

While appellant correctly contends that a conviction cannot be maintained for both an attempt to commit an offense and the completion of the identical offense, appellant appears to be attempting to limit the evidence of the sexual activity to only three instances with his daughter (Count Nos. One through Three) and three instances with his stepson (Count Nos. Seven, Nine, and Ten).  He ignores his daughter's testimony that appellant would pull his pants down and show her his genitals when they would watch movies together and that appellant would sometimes masturbate in front of her while they watched movies or looked at pictures.  He ignores her testimony that this was a repeated course of action and was not limited to three isolated instances.  He, likewise, ignores his stepson's testimony that mutual 'oral pleasure' continued between appellant, his son, and his stepson because appellant had convinced him that this activity was what fathers taught their sons so that the sons would not be embarrassed later on in life by their lack of sexual knowledge.   Again, appellant attempts to limit the evidence to only one instance of oral sex between him and his stepson.  He also reasserts his argument of what a rational jury could infer from his stepson's testimony of 'oral pleasure' while ignoring his son's description of the activity as 'oral sex.'

The record does not support appellant's characterizations of the evidence.  The record does support the jury's convictions for indecency by exposure with his daughter and sexual assault by contact with his stepson.  The record reflects that the jury's verdicts were for separate offenses and were not multiple convictions and punishments for the same offenses.  The doctrine of double jeopardy is not invoked and is not applicable.

*O'Brien*, at *8–9 (citations omitted).

Challenges to multiplicity of offenses invoke double jeopardy protections, which

protects against multiple punishments for the same offense, where cumulative punishment

for one offense has not been authorized.  *United States v. Ogba*, 526 F.3d 214, 232–33 (5th

Cir. 2008).  Multiplicity challenges can arise when a defendant is charged with violating two

19

different statutes, one of which is arguably the lesser included offense of the other.  *United States v. Nguyen*, 28 F.3d 477, 485 (5th Cir. 1994).  Challenges can also arise when charges for multiple violations of the same statute are predicated on arguably the same criminal conduct.  *United States v. Planck*, 493 F.3d 501, 503 (5th Cir. 2007).

This Court has carefully reviewed the evidence, petitioner's arguments, and the intermediate state appellate court's determinations, and finds that petitioner fails to meet his burden of proof under AEDPA.  His unsuccessful attempts to limit the evidence to fit his claims, and to argue that certain evidence was not credible, are inconsistent with the record and with this Court's statutory role on collateral review.  Petitioner does not show that the adjudication of his double jeopardy claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  *See* 28 U.S.C. § 2254(d)(1).  Habeas relief is not warranted on petitioner's double jeopardy claims.

### *Ineffective Assistance of Trial Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient

performance.  *Id*. at 687.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.  In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy.  *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).  However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694.  To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled.  *Id.*

The Supreme Court recently emphasized in *Harrington v. Richter* the manner in which a federal court is to consider an ineffective assistance of counsel claim raised in a habeas petition subject to AEDPA's limitations:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101. (quotation omitted).

Petitioner contends that trial counsel was ineffective in the following particulars.

*Failing to raise double jeopardy*

Petitioner's first trial for four of the instant criminal charges ended in a mistrial due to a "hopelessly deadlocked" jury that was "unable to reach a verdict in any of the four counts."  (Docket Entry No. 23-1, p. 4.)  Petitioner claims that, had trial counsel raised a double jeopardy objection regarding the retrial, the objection would have been granted and the instant trial – and resulting convictions – would not have occurred.

Regardless, petitioner fails to show that the mistrial in his first trial prohibited his second trial.  That is, he does not establish that, had counsel raised a double jeopardy objection as to the second trial, it would have constituted reversible error for the trial court

to deny the objection.  In his affidavit submitted to the trial court on collateral review, trial counsel testified that, in his opinion, there were no legal grounds for raising a double jeopardy objection or motion.  *Ex parte O'Brien*, p. 187.  The trial court found that trial counsel's affidavit was credible, and that trial counsel's performance was not deficient in any respect.  *Id*., p. 309.

Petitioner cites no relevant authority showing that state or federal double jeopardy protections prohibit retrial following a deadlocked jury; indeed, such an argument runs contrary to well-established state and federal law.  The Supreme Court has long held that a mistrial resulting from a deadlocked jury falls within the "manifest necessity" exception to the prohibition against double jeopardy.  *Logan v. United States*, 144 U.S. 263, 297–98 (1892); *United States v. Perez*, 9 Wheat. 579, 22 U.S. 579, 580 (1824).  As a matter of policy, this exception is intended to permit the State to complete a prosecution against a defendant where "unforeseeable circumstances that arise during a trial [make] its completion impossible, such as the failure of a jury to agree on a verdict."  *Richardson v. United States*, 468 U.S. 317, 324 (1984).  Texas state law follows these federal authorities.  *See*, *e.g.*, *Sullivan v. State*, 874 S.W.2d 699, 701 (Tex. App. – Houston [1st Dist.] 1994, pet. ref'd).  Accordingly, petitioner establishes neither deficient performance nor prejudice under *Strickland*.

The state court on collateral review rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective.  Petitioner fails to show that the

state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

*Failing to object to presence of Bikers Against Child Abuse*

Petitioner asserts that trial counsel was ineffective in failing to object to the presence of members of a motorcycle group known as Bikers Against Child Abuse ("BACA"). He baldly asserts that BACA members were allowed to escort the complaining witnesses to and from the witness stand in open court while wearing their membership attire (Docket Entry No. 32, p. 18). However, as petitioner himself concedes, his assertions have no support in the record. *Id.* Petitioner claims that counsel should have objected to the members' presence in the courtroom, requested their exclusion, and/or moved for a mistrial.

In responding to petitioner's claim on state collateral review, trial counsel testified in his affidavit as follows:

> I did not object to the presence in the courtroom of the members of the [BACA] organization because I never felt that a fair trial was jeopardized. I did call their presence to the attention of the Court, because at that time I was unsure of how many members would eventually be present, and was concerned that if they ever acted outwardly that it could be influential to the jury. Their presence and behavior never rose to the level that I considered it to be a problem with the fairness of the trial.
>
> I would estimate the number of members that were present as a few (3–5 at the most) during the first stages of trial. These numbers grew as the trial proceeded, and I would estimate the number of members present at closing argument around 15–20. They did have a presence throughout the trial.

Their appearance was that of normal, well kept, street clothes, with the exception of the uniform leather vests that were black with the group patch on the back.  There were other patches on some of the vests, but I was never able to view them close enough, or study them long enough, to make out what they contained.  Their dress was not inappropriate for the courtroom.  During breaks in trial they waited quietly in the hallways of the courthouse.  I passed through the members of the group on many occasions and they never tried to speak with me or made any intimidating motions or gestures to myself or anyone else that I saw.

I do not believe that their presence influenced the jury, as evidenced by my lack of objections to that presence.  They never interacted with the jury, and sat quietly and unemotional in the courtroom during the trial proceedings.  Their appearance, numbers, and behavior were never such that I felt intimidated by their presence, or that I felt anyone else would be intimidated by their presence.  During closing argument I mentioned things the jury was not to consider during their deliberations, including the 'bikers and groups of people here to influence you.'  This comment was made as a trial strategy, to remind the jury of the Judge's instruction that they were not to consider who was there watching the trial, and to enforce having them focus only on the evidence legally presented to them from the witness stand.

*Ex parte O'Brien*, pp. 187–188.

Additionally, the prosecutor in petitioner's criminal case filed an affidavit on state collateral review, in which she testified as follows:

Members [BACA] attended the applicant's trial, but were not permitted to wear their vests and other regalia in the courtroom during the guilt phase of the applicant's trial.  At the beginning of trial, I would estimate that the group consisted of between three and five individuals, and at one point consisted of as many as ten individuals.  I provided the Court with a brochure once I was informed that members of the group planned to attend.  To prevent interaction with the jurors and potential jurors, the group assembled in the unoccupied witness room before trial.  Contrary to the applicant's assertion, no brochures were placed in the witness or jury rooms.

At no point did the BACA members conduct themselves in a manner disruptive to courtroom proceedings.  I never observed any interaction between

25

jury members and the BACA members, nor did I observe BACA members engage in any behavior that could be considered intimidating to the jurors, witnesses, attorneys or other individuals.

*Id*., pp. 226–27.  Moreover, the trial court admonished the jurors in open court as follows:

My understanding there's quite a few folks that just want to come in and watch this trial.  I don't know who they are, don't know anything about them.  You are not to consider who is here watching the trial, whether it be media or individuals for any purpose whatsoever.  You base your verdict on the evidence in the case.  Don't worry about who comes in and watches the case.

3 R.R. 7.

In rejecting petitioner's claim on collateral review, the state trial court made the following relevant findings of fact:

5.      [Trial counsel] submitted a credible affidavit in answer to the applicant's claims of deficient performance.

6.      [Trial counsel] presented a vigorous defense for the applicant, and his performance was not deficient in any respect.

7.      The presence of members of the group [BACA] did not have an impact on the jury's verdict.  The group never interacted with the jury or disrupted courtroom proceedings.  The applicant's description of the group's size or involvement in trial is not credible.

8.      No [BACA] flyers were placed in the jury room at any time.

*Id*., pp. 308–309.  The state trial court further made the following relevant conclusions of law:

2.      The applicant has failed to prove by a preponderance of the evidence that he was denied his right to the effective assistance of counsel at trial or on appeal.

26

>3.     The applicant has failed to prove by a preponderance of the evidence that he suffered any inherent prejudice from the presence of members of the group [BACA], or that their presence affected the jury's determination of guilt.

*Id.*, p. 310 (citations omitted).  The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief.  *Id.*, at cover.

Petitioner fails to show that, had counsel objected to the presence of the group members, the objection would have been granted and the members would have been excluded from the courtroom.  This failure is particularly significant in light of the state trial court's finding that the members had no impact on the jury's verdict.  It is well established that defense counsel is not obligated to make futile objections.  *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007); *see also Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections.").  Refraining from objecting when counsel knows it will be overruled and will only serve to provoke the judge or the jury is essential to effective trial advocacy.  Petitioner here fails to establish that trial counsel was deficient in not objecting, and he makes no showing that the failure to object resulted in actual prejudice.  *See Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008).

The state court on collateral review rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of,

*Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of these claims.

      *Failing to object to the State's bolstering of its witnesses*

      Petitioner complains that trial counsel should have objected to the State's vouching for the credibility of its witnesses during closing argument on guilt-innocence.

      In responding to this claim on collateral review, trial counsel testified in his affidavit as follows:

> [P]art of trial strategy is to make objections which will be productive in the zealous representation of your client.  A complete review of the entire record will show that I made numerous objections throughout the trial.  One has to be extremely careful in the representation of their clients to raise only objections that are purposely [*sic*].  Often times making numerous objections that appear to be without purpose can become offensive to a jury and work against the jury maintaining a fair perception of your client during trial.
>
> In reference to the 'prosecutor's vouching for the credibility of the witness,' I did not object because I felt that the argument was not an expression of the prosecutor's personal option, but presentation of her reasonable deduction from the evidence.  As such an objection would have been improper.

*Ex parte O'Brien*, p. 189.

      In rejecting petitioner's claims of ineffective assistance of trial counsel, the state trial court on collateral review expressly found that, "The applicant complains generally about the State's closing argument, but the argument was proper.  [Trial counsel's] decision not to object to the various statements complained of by the applicant is well within the range of reasonable professional assistance." *Id*., p. 309.  The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.  *Id*., at cover.  This Court is bound by the state

trial court's finding that the arguments were proper under state law. *See Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991) (holding that federal habeas courts do not sit as "super state supreme courts" to review errors of state law).

Petitioner disagrees with trial counsel's statements, and disagrees with the trial court's ensuing findings of fact and conclusions of law. This is insufficient to warrant federal habeas relief. Because the state court found that the complained-of testimony and arguments were proper under state law, petitioner cannot show that counsel was deficient in failing to object. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Nor can petitioner establish that, but for counsel's failure to object, there is a reasonable probability that the result of the trial would have been different.

The state court on collateral review rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

*Failing to object to State's comments and improper jury argument*

Petitioner argues that trial counsel was ineffective in failing to object to the State's comment regarding his pre-arrest silence and to improper jury argument that went outside the record. In responding to these allegations, trial counsel testified in his affidavit as follows:

29

In reference to 'the prosecutor's comment on the Applicant's pre-arrest silence,' I did not object because it was not improper argument. The prosecutor was making a reasonable deduction from the evidence in regards to how Applicant behaved pre-arrest, and how this behavior could be suggestive of guilt, no different than any other of his pre-arrest behaviors and actions that were mentioned by the State during closing argument. This argument is also supportive of the Applicant's claims that the accusations never occurred, and why he would not have had anything to say at the time. I felt it was good strategy not to object given the fact that this argument could have worked in our favor and showing innocence of the accusations.

In reference to 'the prosecutor's argument outside the record,' I did not object because I did not believe that the prosecutor was arguing outside the record. She was making reasonable deductions from the evidence.

*Ex parte O'Brien*, pp. 189–90.

In rejecting petitioner's claims on collateral review, the state trial court made the following relevant finding of fact:

11.    The applicant complains generally about the State's closing argument, but the argument was proper. [Trial counsel's] decision not to object to the various statements complained of by the applicant is well within the range of reasonable professional assistance.

*Ex parte O'Brien*, p. 309.  The Texas Court of Criminal Appeals relied on the state trial court's findings of fact and conclusions of law in denying habeas relief.  *Id.*, at cover.

Because the state court found that the complained-of testimony and arguments were proper under state law, petitioner cannot show that counsel was deficient in failing to object. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).  Nor can petitioner establish that, but for counsel's failure to object, there is a reasonable probability that the result of the trial would have been different.

The state court on collateral review rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

*Failing to insure a fair trial by an impartial jury*

Petitioner argues that trial counsel failed to insure that he received a fair trial by an impartial jury. Petitioner appears to argue primarily that counsel made no effort to keep the BACA members out of the courtroom during trial. This Court has already rejected petitioner's claims for habeas relief arising from the group's presence.

Petitioner also complains in generalized terms that trial counsel was ineffective for his "numerous failures to object," failure to "familiarize himself with the law," failure to object to closing argument regarding a witness, failure to investigate "exculpatory and material impeachment evidence pertaining to [his] business closure and locks being changed," failure to give an opening statement after the State rested, failure to complain that the State insisted that petitioner "comment, forty-one times, to the veracity" of the complainants' testimony, failure to preserve for the record the exact count, locations, and attire of the BACA members, and failure to complain that the errors occurring during trial constituted cumulative error denying him a fair trial. Petitioner's arguments regarding all of these alleged improprieties are conclusory and unsupported in the record. Even assuming

such alleged deficiencies were established, petitioner wholly fails to show that, but for these alleged deficiencies, there is a reasonable probability that the result of his trial would have been different.

The state court on collateral review rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

*Failing to object to the jury charge*

Petitioner contends that trial counsel should have objected to the italicized portion of the following jury instruction appearing in the trial court's charge to the jury:

> You are instructed that if there is any evidence before you in this case regarding the defendant's having committed crimes, wrongs, or acts against *the child who is the victim of the alleged offense*, other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other crimes, wrongs, or such other acts, if any were committed, and even then you may only consider the same on the state of mind of the defendant and the child, and the previous and subsequent relationship between the defendant and the child, and no other purpose.

C.R. at 88–89 (emphasis added).

Petitioner claims that the italicized language constituted an impermissible comment on the weight of the evidence, and that it "was clearly intended to arouse the sympathy and/or excite the passions of the jury" in violation of article 36.14 of the Texas Code of Criminal

Procedure. Petitioner argues that the phrase should have been modified to state, "the child who is the *alleged* victim of the alleged offense."

Trial counsel filed an affidavit with the trial court on collateral review, in which he testified that he did not object to the jury instruction because

> the manner in which it was presented did not dictate that the complainant was in fact a 'victim' in this matter. The Court's instruction to the jury did not assume that the complainant, as named in the indictment, was in fact the victim, and as such was not an improper comment on the evidence, as claimed by Applicant.

*Ex parte O'Brien*, p. 190.

To prevail on his claim that trial counsel was ineffective in failing to object to the jury instruction, petitioner must show that, had counsel raised the objection, it would have constituted reversible error for the trial court to deny the objection. This, petitioner fails to do. Moreover, the state trial court found that trial counsel was not ineffective, and that petitioner failed to prove by a preponderance of the evidence that the jury charge violated his right to a fair and impartial trial. *Id.*, p. 310.

Moreover, this Court has considered the jury instruction in context of the totality of the jury charge, and finds that the instruction did not constitute an improper comment on the weight of the evidence, nor was it clearly intended to arouse the sympathy and/or excite the passions of the jury. A straightforward reading of the sentence shows that use of the word "alleged" to modify "offense" was sufficient to avoid the problems suggested by petitioner. Regardless, petitioner does not demonstrate that, but for trial counsel's failure to request

inclusion of the term "alleged" to modify "victim" in the instruction, there is a reasonable probability that the result of the trial would have been different.

The state court on collateral review rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

*Having a conflict of interest*

Petitioner claims that trial counsel was ineffective because he represented petitioner while laboring under a conflict of interest. According to petitioner, trial counsel and his wife were facing criminal charges for bribery through the Montgomery County District Attorney's Office during the time counsel represented petitioner.

Two types of conflicts of interest on the part of a defense counsel are recognized in the law: (1) multiple representation cases, in which the defendant must show that an actual conflict of interest adversely affected his lawyer's performance, and (2) cases involving other types of conflicts that might impinge upon an attorney's loyalty to his client, in which the defendant must demonstrate actual prejudice under *Strickland*. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).

In his affidavit submitted to the trial court on state collateral review, trial counsel testified that his representation of petitioner did not result in a conflict of interest because of

34

any criminal charges pending against counsel or his spouse, nor were there any charges in existence that affected counsel's ability to represent petitioner. *Ex parte O'Brien*, p. 191. The trial court found that trial counsel's affidavit was credible, and that counsel's performance was not deficient in any respect. *Id.*, p. 309. The trial court noted that petitioner "knew of the charges pending against [trial counsel] before trial." *Id*. The Texas Court of Criminal Appeals relied on the state trial court's findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

Petitioner's disagreement with trial counsel's affidavit, his disagreement with the trial court's findings of fact and conclusions of law, and his unsupported personal opinion that the trial court "blindly signed without even reading" the proposed findings and conclusions submitted by the State, do not constitute grounds for federal habeas relief. Petitioner fails to establish that trial counsel labored under an actual conflict of interest during his representation of petitioner and, in particular, fails to establish any prejudice or harm.

The state court on collateral review rejected petitioner's assertion of ineffective counsel and found that trial counsel provided constitutionally effective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

### Ineffective Assistance of Appellate Counsel

Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985). This Court reviews counsel's appellate performance under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998). Petitioner must allege and present facts showing that his appellate counsel's representation was deficient and that the deficient performance caused him prejudice. That is, petitioner must show that, but for appellate counsel's deficient performance, the outcome of the appeal would have been different. *See Strickland*, 466 U.S. at 687–88, 692; *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998). Effective assistance of appellate counsel does not mean that counsel will raise every available non-frivolous ground for appeal. *Evitts*, 469 U.S. at 394. Nor will counsel be deficient for failing to press a frivolous point. Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *Evitts*, 469 U.S. at 394. A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful. *Strickland*, 466 U.S. at 690–91.

Petitioner asserts that appellate counsel was ineffective in the following instances.

*Failure to discuss appellate grounds*

Petitioner complains that appellate counsel failed to discuss potential grounds for appeal with him prior to filing the appellate brief. In response to petitioner's allegations,

appellate counsel filed an affidavit with the trial court on collateral review, and testified as

follows:

> I met with [petitioner] at the jail, corresponded with him in writing, and met
> with his wife multiple times at my office.  In addition, I sent a copy of the
> transcript for his review, made a copy for his wife, and met with his wife at her
> place of work to give her additional information.

*    *    *    *

> The legal issues presented to the Court of Appeals were complex, and
> additional communication with the Applicant, a layperson, was not needed.
> In fact, it became extremely time consuming and inefficient to communicate
> with the Applicant, as he was focused on the merits of the first trial which
> resulted in a mistrial.  The issues he presented and urged me to address, would
> have resulted in frivolous filings with the Court of Appeals.  I am confident a
> review of my brief is proof that all potential legal issues were addressed and
> the Applicant's complaints should be disregarded.

*Ex parte O'Brien*, p. 268.

In rejecting petitioner's claim of ineffective assistance of appellate counsel, the state

trial court made the following relevant findings of fact on collateral review:

> 12.   The Court is familiar with the performance of the applicant's appellate
> attorney, [], who has long practiced in the courts of Montgomery
> County and is well-qualified for appointment as appellate counsel in
> felony cases.

> 13.   [Appellate counsel] submitted a credible affidavit in answer to the
> applicant's claims of deficient performance.

> 14.   [Appellate counsel] communicated with the applicant both directly, and
> through his wife, to the extent necessary to prepare his appeal.

*Ex parte O'Brien*, p. 309.   The state court concluded that petitioner failed to establish

ineffective assistance of appellate counsel.  *Id*., p. 310.   The Texas Court of Criminal

Appeals relied on these findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

Petitioner's conclusory claim that appellate counsel failed to communicate adequately with him regarding appellate issues is unsupported by the record and insufficient to raise a genuine issue of material fact precluding the granting of summary judgment. Petitioner does not show that, had appellate counsel undertaken additional communication with him, there is a reasonable probability that the result of the appeal would have been favorable. Petitioner fails to meet his burden of proof under AEDPA.

The state court on collateral review rejected petitioner's claims of ineffective assistance and found that appellate counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

*Failure to utilize prior record*

Petitioner next claims that appellate counsel failed to designate portions of the record from the first trial for use on appeal in the second trial. According to petitioner, the testimony of the complaining witnesses in the first trial was not entirely consistent with their testimony in the second trial. He contends that appellate counsel should have utilized the prior record to challenge the second trial on appeal.

In her affidavit submitted to the trial court on collateral review, appellate counsel discussed petitioner's unhelpful focus on the first trial:

> In fact, it became extremely time consuming and inefficient to communicate with the Applicant, as he was focused on the merits of the first trial which resulted in a mistrial.  The issues he presented and urged me to address, would have resulted in frivolous filings with the Court of Appeals.

*Ex parte O'Brien*, p. 268.  As previously noted, the state trial court found appellate counsel's affidavit testimony credible.

Petitioner fails to demonstrate that appellate counsel was ineffective in not utilizing the record from the first trial, and fails to show that, but for appellate counsel's failure to utilize the record, there is a reasonable probability that the appeal would have been successful.  Petitioner's conclusory allegations are unsupported in the record and fail to show deficient performance and actual prejudice under *Strickland*.

The state court on collateral review rejected petitioner's claims of ineffective assistance and found that appellate counsel was not ineffective.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of this claim.

*Failure to raise substantial error*

Petitioner complains that appellate counsel failed to raise grounds showing substantial error.   According to petitioner, had other grounds been raised, the appeal would have been successful.

39

In rejecting petitioner's assertion regarding appellate counsel, the state trial court made the following relevant findings of fact on collateral review:

>    15.    [Trial counsel] presented appropriate issues on appeal, and the applicant has failed to show that any alleged error not raised on appeal would likely have affected the outcome had it been raised.
>
>    16.    [Trial counsel] informed the applicant that his conviction had been affirmed, and that he could file a petition for discretionary review on his own.

*Ex parte O'Brien*, p. 309.   The state court concluded that petitioner failed to establish ineffective assistance of appellate counsel.   *Id*., p. 310.   The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief.   *Id*., at cover.

The grounds petitioner argues counsel should have raised on appeal are grounds raised in this federal habeas petition.   In light of this Court's rejection of petitioner's federal habeas claims, petitioner can show neither deficient performance nor prejudice as to appellate counsel's representation.   Petitioner fails to show that, but for appellate counsel's failure to raise these issues, there is a reasonable probability that the appeal would have been successful.

The state court rejected these issues on collateral review and found that appellate counsel provided constitutionally effective assistance.   Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland*

or was an unreasonable determination of the facts based on the evidence in the record.

Respondent is entitled to summary judgment dismissal of these claims.

### *Prosecutorial Error*

*Brady violation*

Petitioner alleges that the State unlawfully withheld documents and other evidence

showing that his son presented perjured testimony, in violation of *Brady v. Maryland*, 373

U.S. 83 (1963). In responding to this claim, the prosecutor in petitioner's case submitted an

affidavit on state collateral review, in which she testified that,

> I am not aware of the existence of any of the documents described by the
> applicant. The documents described by the applicant have never been in the
> possession of the State. The applicant's attorney was given complete access
> to the State's file throughout the period leading up to trial.

*Ex parte O'Brien*, p. 227.

To establish a *Brady* violation, a petitioner must show that the State suppressed

evidence favorable and material to the defense and that the discovery of the evidence was not

the result of a lack of due diligence on the part of the defense. *Brady*, 373 U.S. at 87.

Petitioner in the instant case meets none of these requirements. His conclusory

assertions that his son lied at trial are unsupported in the record and are insufficient to

demonstrate perjury. To the extent petitioner claims that his son's testimony differed from

his testimony in the first trial, his son's testimony from the first trial was a matter of record

that was available to both the State and the defense, and did not constitute documents or

evidence the State withheld from the defense. Nor does the fact that his son's testimony at

the first trial differed in certain respects from his testimony at the second trial stand as proof of perjury, and petitioner's conclusory assertions to the contrary are not grounds for federal habeas relief.

Petitioner also makes reference in his response to a "deal" entered into between the State and his son, whereby in exchange for his testimony, the son would not be required to register as a sex offender under state law.  In responding to this claim, the prosecutor in petitioner's case submitted an affidavit on collateral review, in which she testified that,

> The applicant's son, [], did not commit perjury.  He was not offered anything by me, or any other prosecutor in the Montgomery County District Attorney's Office in exchange for his testimony, and he testified truthfully in that regard during the applicant's trial.

*Ex parte O'Brien*, p. 227.  Petitioner presents no probative summary judgment evidence of such an agreement, and his bare unsupported allegations are insufficient to establish a constitutional violation.  *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

The trial court rejected petitioner's *Brady* claims on collateral review and made the following relevant findings of fact:

> 9.   The alleged exculpatory material probably does not exist, nor was it ever within the exclusive possession of the State.  The applicant's description of events allegedly occurring during his first trial, purporting to establish the State's possession of undisclosed exculpatory material, is not credible.

> 10.  [T]he applicant's son testified truthfully regarding the status of charges then pending against him.  The applicant's claim that the State suborned perjury from his son is not credible.

*Ex parte O'Brien*, p. 309.  The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief.  *Id*., at cover.

Petitioner fails to establish that the State violated *Brady*.  The state court rejected petitioner's claims on collateral review and denied habeas relief.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of these claims.

*Bolstering of witnesses*

Petitioner claims that the State wrongfully vouched for and bolstered the testimony of its outcry witnesses.   In responding to this claim on state collateral review, trial counsel testified in his affidavit as follows:

> In reference to 'the prosecutor's 'bolstering' of testimony of witnesses,' I did not object because she did not bolster any witness testimony.  She did not personally vouch for any of the witnesses.  She was making reasonable deductions from the evidence in regards to their veracity.  This was done in response to the Defense's position that these witnesses were being untruthful.

*Ex parte O'Brien*, p. 190.

In rejecting petitioner's claim of improper argument, the state trial court on collateral review expressly found that, "The applicant complains generally about the State's closing argument, but the argument was proper."  *Id*., p. 309.  The trial court further concluded that, "The applicant has failed to prove by a preponderance of the evidence that the prosecutor for the State engaged in misconduct by arguing to the jury that the witnesses testified truthfully,"

43

and that, "The applicant has failed to prove by a preponderance of the evidence that the testimony of [his son] was perjured, or that his testimony resulted in a violation of due process." *Id.*, p. 310.   The Texas Court of Criminal Appeals relied on the state trial court's findings of fact and conclusions of law in denying habeas relief.  *Id.*, at cover.

A review of the record shows that the State's actions were, indeed, in response to the defense's comments regarding the credibility and truthfulness of the witnesses.  Under Texas state law, this constitutes a proper response by the prosecution in context of the defense's own arguments and actions.  *See Mackay v. State*, 707 S.W.2d 23, 37 (Tex. Crim. App. 1985).  Petitioner's disagreement with the trial court's findings of fact and conclusions of law, and his unsupported assertions of bolstering, are insufficient to meet his burden of showing prosecutorial misconduct under AEDPA.

The state court rejected petitioner's claims on collateral review and denied habeas relief.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of these claims.

### *Trial Court Error*

#### *Improper jury charge*

Petitioner claims that the trial court denied him a fair trial by charging the jury with an improper instruction in violation of article 36.14 of the Texas Code of Criminal

Procedure.  Petitioner unsuccessfully raised this jury charge claim in context of ineffective assistance of counsel, and now re-urges it cast as trial court error.

Under article 36.14, the trial judge is to provide a written charge to the jury that, among other requirements, sets forth the applicable law and expresses no opinion as to the weight of the evidence.  The jury charge must not be clearly intended to arouse the sympathy and/or excite the passions of the jury.  Petitioner contends that the following italicized language in the jury charge violated those provisions:

> You are instructed that if there is any evidence before you in this case regarding the defendant's having committed crimes, wrongs, or acts against *the child who is the victim of the alleged offense*, other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other crimes, wrongs, or such other acts, if any were committed, and even then you may only consider the same on the state of mind of the defendant and the child, and the previous and subsequent relationship between the defendant and the child, and no other purpose.

C.R. at 88–89 (emphasis added).

Petitioner argues that the italicized language should have been modified to state, "the child who is the alleged victim of the alleged offense."  In denying this habeas ground on collateral review, the state trial court concluded that, "The applicant has failed to prove by a preponderance of the evidence that the jury charge violated his right to a fair and impartial trial." *Ex parte O'Brien*, p. 310.  The Texas Court of Criminal Appeals relied on the state trial court's findings of fact and conclusions of law in denying habeas relief.  *Id.*, at cover.

Improper jury instructions in state criminal trials generally do not provide a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991). Moreover, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Boyde v. California*, 494 U.S. 370, 378 (1990). In order to warrant federal habeas relief on the basis of a violation of due process regarding a jury instruction, the federal district court must find that the jury charge error rendered the entire trial fundamentally unfair. *Thompson v. Lynaugh*, 821 F.2d 1054, 1060 (5th Cir. 1987). It is not enough to argue that the instruction was undesirable, erroneous, or even universally condemned.

Petitioner fails to establish that the complained-of language in the jury instruction was improper under state law. Even assuming the language were improper, petitioner fails to show that it rendered his entire trial fundamentally unfair. The state court determined that petitioner was not denied a fair and impartial trial, and petitioner does not meet his burden of proof under AEDPA to merit federal habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

*Failure to hold Garcia hearing*

Petitioner asserts that the trial court was required, but failed, to hold a hearing under *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975), *abrogated on other grounds by*

46

*Flanagan v. United States*, 465 U.S. 259, 263 & n. 2 (1984).  *Garcia* requires a trial court to hold a hearing if the court knows or reasonably should know that a conflict exists within an attorney's representation of a defendant.  *See United States v. Greig*, 967 F.2d 1018, 1022 (5th Cir. 1992).

Because this Court has already rejected petitioner's claim that trial counsel labored under a conflict of interest, petitioner cannot show that the trial court erred in failing to hold a *Garcia* hearing.  Petitioner is not entitled to habeas relief on this claim.

### *Denial of a Fair Trial*

Petitioner claims that the presence of BACA members at his trial denied him due process and a fair trial.  He also appears to argue that, due to all of the other alleged errors and mistakes in his case, he was denied a fair trial.

This Court has already reviewed and considered all of the alleged errors and mistakes claimed by petitioner in this habeas proceeding, including his complaints regarding the BACA members, and has found nothing warranting federal habeas relief.  Petitioner falls well short of showing that he was denied a fair trial, and this claim for relief holds no merit.

The state court rejected petitioner's claim that he was denied a fair trial.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of this claim.

### *Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 23) is GRANTED and this lawsuit is DISMISSED WITH PREJUDICE.  A certificate of appealability is DENIED.  Any and all pending motions are DENIED AS MOOT.

Signed at Houston, Texas on Jul 24, 2015.

Gray H. Miller
United States District Judge

48